JOHN S. LEONARDO
United States Attorney
District of Arizona
RYAN P. DEJOE
Assistant United States Attorney
Evo A. DeConcini Federal Courthouse
405 West Congress Street, Suite 4800
Tucson, Arizona 85701
Telephone: (520) 620-7300
ryan.dejoe@usdoj.gov
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| IN THE MATTER OF THE EXTRADITION OF DANE EDWARD ROSSMAN | NO. 13-10092M-DTF<br><br>RESPONSE TO MOTION FOR RELEASE ON BAIL IN EXTRADITION PROCEEDINGS |

The government, by and through its attorneys, John S. Leonardo, United States Attorney for the District of Arizona, and Ryan P. DeJoe, Assistant U.S. Attorney, acting on behalf of the Canadian government, hereby submits this response to the fugitive's motion for release on bail. The hearing is currently set for Thursday, March 21, 2013, at 3:30 p.m.

**I.    Factual Background**

The fugitive, Dane Rossman, ("Rossman"), was arrested on February 20, 2013, pursuant to a complaint and warrant issued by U.S. Magistrate Judge Jacqueline Marshall, seeking the fugitive's extradition to Canada, pursuant to an extradition treaty between Canada and the United States, 27 UST 983, TIAS 8237 (hereinafter, "the Treaty"), and pursuant to 18 U.S.C. 3184 *et seq*. Magistrate Judge Marshall signed the warrant for arrest for extradition on February 19, 2013. The fugitive is currently in the custody of the United States Marshal Service.

Authorities in Canada seek the extradition of Rossman to answer the following charges under the Criminal Code of Canada (CCC):

(1) Mischief - CCC 430(3)

(2) Mischief Endangering Life - CCC 430(2)

(3) Disguise with the Intent to Commit an Indictable Offense - CCC 351(2)

Article 2 of the Treaty provides for the extradition of persons accused or convicted of these crimes. The Court of the Province of Ontario in Canada had issued a warrant for Rossman's arrest on December 20, 2010 for this purpose.

The United States, in execution of its treaty responsibilities and acting at the request of Government of Canada, urges that the fugitive be held without bond pending receipt of the formal request for extradition and/or the hearing on the certification of the extradition pursuant to 18 U.S.C. 3184 *et seq.* and files this memorandum in support thereof.

**II.     Legal Background**

The federal statute governing extradition procedures in the United States pursuant to treaties with other nations, 18 U.S.C. §§ 3184 *et seq.*, does not provide for bail. Further, an extradition proceeding is not a criminal case. *See Kamrin v. United States*, 725 F.2d 1225, 1227-1228 (9th Cir. 1984); *Martin v. Warden, Atlanta Penitentiary*, 993 F.2d 824, 829 (11th Cir. 1993). Consequently, the Bail Reform Act, Title 18 U.S.C. §§ 3141 *et seq.*, and its criteria governing the allowance and the amount of bail in United States criminal cases do not apply in extradition matters. The Bail Reform Act applies only to "offenses" against the United States that are triable in United States courts. *See* 18 U.S.C. §§ 3141(a), 3142, 3156(a)(2). Rossman is not charged with an "offense" within the meaning of 18 U.S.C. § 3156. Instead, Rossman is charged with Mischief, Mischief Endangering Life, and Disguise with the Intent to Commit an Indictable Offense, pursuant the Canadian Criminal Code (CCC), against the Requesting State, Canada. *See Matter of Extradition of Rouvier*, 839 F. Supp. 537, 539 (N.D. Ill. 1993); *Matter of Extradition of Sutton*, 898 F. Supp. 691, 694 (E.D. Mo. 1995).

Similarly, neither the Federal Rules of Criminal Procedure or the Federal Rules of Evidence apply to international extradition proceedings. Fed R. Crim. P. 1(a)(5)(A); Fed. R. Evid. 1101 (d)(3); *See also, Afanesjev v. Hurlburt*, 418 F.3d 1159, 1164-65 (11th Cir. 2005); *Melia v. United States*, 667 F.2d 300, 302 (2nd Cir. 1981); *Bovio v. United States*, 989 F.2d 255, 259 n.3 (7th Cir. 1993).

### A.   A Strong Presumption Against Bail Governs In An International Extradition Proceeding.

The overwhelming weight of authority supports the strong presumption against the granting of bail in international extradition cases. Both the United States Supreme Court and the federal courts of appeals have long held that bail should be granted in only the most unusual of circumstances.

In the landmark case *Wright v. Henkel*, 190 U.S. 40 (1903), the Supreme Court affirmed the detention without bail of a fugitive sought by Great Britain for defrauding a corporation of which he was a director. The United States argued in *Wright* that extradition courts were without power to allow bail because no statute provided for such power. *Id.* at 55. The Court stated that it was unwilling to hold that the circuit courts do not possess power with respect to admitting fugitives to bail other than as specifically vested by statute, but cautioned that " . . . bail should not ordinarily be granted in cases of foreign extradition . . . ." *Id.* at 63.

In establishing this presumption against bail, the Supreme Court in *Wright* explained that when a foreign government makes a proper request under a valid extradition treaty, the United States is obligated to deliver the person sought after he or she is apprehended:

> The demanding government, when it has done all that the treaty and the law require it to do, is entitled to the delivery of the accused on the issue of the proper warrant, and the other government is under obligation to make the surrender; an obligation which it might be impossible to fulfill if release on bail were permitted. The enforcement of the bond, if forfeited, would hardly meet the international demand; and the regaining of the custody of the accused obviously would be surrounded with serious embarrassment.

*Id.* at 62.

The reasons for this presumption against bail in international extradition cases are clear and compelling. First, it is necessary for the United States to meet its legal treaty obligations. A person sought for extradition already is an international fugitive from justice; it is reasonable to think that person would flee if alerted to the charges. Even if the person were not in flight, the fact of an impending extradition to a foreign country to face serious criminal charges, the outcome of which is uncertain, is itself a strong incentive to flee.

Further, the ability of the United States to deliver fugitives pursuant to extradition requests has significant international law implications. The international legal system depends wholly upon the respect of its members for the obligations into which they freely enter. When, as here, the Government of Canada meets the conditions of the treaty, the United States is obliged to deliver the fugitive. It is important that the United States be regarded in the international community as a country that honors its agreements in order to be in a position to demand that other nations meet their reciprocal obligations to the United States. Such reciprocity would be defeated if a fugitive flees after being released on bond. *See Wright*, 190 U.S. at 62; *see also U.S. v. Leitner*, 784 F.2d 159, 160-61 (2d Cir. 1986)(the Government has an overriding foreign relations interest in complying with treaty obligations and producing extradited persons).

      B.      <u>The Fugitive Must Establish "Special Circumstances" and Must Not Pose a Risk of Flight for the Court to Consider the Question of Bail</u>

In light of the strong presumption against bail established in *Wright*, the federal courts have uniformly held that bail shall not be granted except under "special circumstances." *See United States v. Leitner*, 784 F.2d at 160 (bail in extradition cases should be granted "only in the most pressing circumstances, and when the requirements of justice are absolutely peremptory"), (quoting *In re Mitchell*, 171 F. 289 (S.D.N.Y. 1909)(Hand, J.); *Salerno v. United States*, 878 F.2d 317, 318 (9th Cir. 1989)("only 'special circumstances' will justify bail"); *Koskotas v. Roche*, 931 F.2d 169, 175 (1st Cir. 1991)("in a case involving foreign

extradition, bail should not be granted absent special circumstances"). Moreover, the burden is on the fugitive to establish the existence of special circumstances warranting the granting of bail. *See Salerno*, 878 F.2d at 317-18; *Leitner*, 784 F.2d at 160.

Notably, the courts have determined that certain circumstances are not "special" and do not justify the release of a fugitive during extradition proceedings. Foremost, the absence of flight risk is consistently held not to constitute a special circumstance. Rather, the absence of a risk of flight and a finding of special circumstances are each independent requirements for bail in an extradition case. Therefore, to qualify for bail, a fugitive is required to make a two-part showing that: (1) he or she is not a flight risk and (2) that "special circumstances" exist warranting the granting of bail. *See e.g., United States v. Ramnath*, 533 F. Supp. 2d 662, 665 (E.D. Tex. 2008); *In re Extradition of Molnar*, 182 F. Supp. 2d 682, 687 (N.D. Ill. 2002); *In re Extradition of Nacif-Borge*, 829 F.Supp. 1210, 1215 (D. Nev. 1993); *In re Extradition of Chapman*, 459 F.Supp.2d 1024, 1026-27 (D. Haw. 2006); *In re Extradition of Santos*, 473 F. Supp. 2d 1030, 1035-36 (C.D. Cal. 2006). The absence of flight risk is consistently held to be a requirement separate from the special circumstances test.

To illustrate, in *Leitner*, the fugitive was a United States citizen, who had been arrested in Israel and charged with acts of terrorism against Arabs. Israeli authorities freed Leitner on bail after he agreed to cooperate with them. After receiving death threats, Leitner fled to his home in the United States and lived openly under his own name for a year and a half. He attended law school, drove a taxi under his own name, and lived with or frequently visited his parents. Based upon the foregoing, the Magistrate Judge found that Leitner did not pose a flight risk. The Second Circuit, in affirming the district court's reversal of the grant of bail, held that the lack of flight risk was not a "special circumstance." 784 F.2d at 161. *See also, Salerno*, 878 F.2d at 318 (flight risk "is not a criteria for release in an extradition case"); *Matter of Russell*, 805 F.2d 1215, 1216 (5th Cir.)("[b]eing a tolerable bail risk is not in and of itself a special circumstance"); *United States v. Williams*, 611 F.2d 914,

915 (1st Cir. 1979)("even applicant's arguable acceptability as a tolerable bail risk" is not a special circumstance). Instead, absence of flight risk is an independent and additional condition that must be demonstrated to warrant bail. Similarly, findings regarding danger to a community both here and abroad would preclude bail, even in the face of arguably special circumstances. *See In re Extradition of Gonzalez*, 52 F.Supp.2d 725, 735 (W.D. La. 1999); *Ramnath*, 533 F. Supp. 2d at 665; *Extradition of Molnar*, 182 F. Supp. 2d at 687; *Extradition of Nacif-Borge*, 829 F.Supp. at 1215; *Extradition of Santos*, 473 F. Supp. 2d at 1035-36.

The defendant cites *Parretti v. United States* 122 F.3d 758 (9th Cir. 1997); decision withdrawn and appeal dismissed on other grounds, 143 F.3d 508 (9th Cir. 1998)(en banc), *cert. denied*, 525 U.S. 877 (1998), in support of his motion for release under the Due Process Clause. *Paretti* is not the law of the Ninth Circuit, nor the law of any other circuit, and serves no precedential value. The Ninth Circuit, 143 F.3d 508 (9th Cir. 1998)(en banc), *cert. denied*, 525 U.S. 877 (1998), later withdrew and dismissed the appeal. Further, in the seminal *Wright* case, 190 U.S. 40, 43 (1903), the Supreme Court upheld the denial of a bail application despite the petitioner's claim that denial of bail was a due process violation. Although the Supreme Court earlier in *Wright* recognized that it had not permanently foreclosed the possibility of due process arguments, by upholding the decision to deny bail, it at least implicitly rejected the fugitive's due process claim.

**III.   Argument**

    A.        <u>Rossman Has Failed to Demonstrate Special Circumstances that Warrant His Release on Bond</u>.

Rossman has failed to establish special circumstances that warrant his release on bond and has not shown he is not a flight risk. The defendant cites the matter of one of his alleged co-conspirators, *United States v. McCormic*, No. 1:13-mj-1080-RBC-1 (D.Mass Feb. 21, 2013) in support of his request for bail. The court in that case released McCormic but not

1 before placing restrictive conditions on his release in its order. (Exhibit 1). McCormic had
2 already made arrangements to return to Canada and had waived extradition. The court
3 ordered that the defendant leave the United States the day after being released, check in with
4 the United States Marshal at each of his airport stops, and if he did not appear in Canada he
5 was required to appear in court the following day or be arrested for failure to appear.

6 The defendant states in his motion he is indigent. This will not aid his request for bail
7 because he needs to appear to answer the charges in Canada. The defendant is seeking
8 release pending the extradition hearing, but given the interest of foreign relations and the fact
9 that the alleged co-conspirators were only released after returning to Canada, this factor must
10 be considered by the Court to determine if Rossman has met his burden to show "special
11 circumstances" exist. As *Wright* and the subsequent cases show not being a flight risk for
12 pending proceedings in this country does not qualify as "special circumstances."

13 In contrast, McCormic was able to show special circumstances through his already
14 having arranged travel plans the day after his release and his "release" was even further
15 restricted by the court. McCormic also has no criminal record in the United States, whereas
16 Rossman has a felony conviction for disorderly conduct. The defendant in this case has
17 shown no such plan to return to Canada voluntarily and his statement that he is indigent
18 weakens his argument that he should be afforded release because an alleged co-conspirator
19 was released in the United States. Coupled with the fact he has not waived extradition,
20 Rossman has not made a showing of special circumstances to the extent that McCormic did
21 to be entitled to the limited release he was granted, let alone a $5,000 bond Rossman is
22 seeking. Rossman stated he would have to borrow money from others to satisfy a $5,000
23 bond, so if he were to abscond it would not be his own money that would be forfeited.

24 In any event, a fugitive charged with crimes in another country is already by definition
25 in flight or deliberately absent from that jurisdiction. Here the strong presumption against
26 bail is supported by his crimes targeted at the G-20 Summit and his felony conviction from

Pima County for disorderly conduct that show a pattern of crimes against society and disregard for laws and law enforcement. In addition, Rossman's residence in Tucson puts him considerably farther from Canada than any of his alleged co-conspirators, including McCormic. Rossman has also lived in several locations within the United States. Hence, the argument could be made that further flight from the United States to Mexico or another location in the United States is a reasonable assumption. Furthermore, even if Rossman is determined to be a suitable candidate for release under normal circumstances, in light of *Wright* and its progeny that fact does not meet the requirement of "special circumstances" as to warrant release.

B.     <u>Rossman's Arguments Regarding The Merits Do Not Avail Him</u>.

Rossman understates the amount of evidence pertaining to the accuracy of his identification, particularly in light of the probable cause standard is employed for an extradition hearing. An expert comparison was made, the exhibit and affidavits attached by Rossman outlines the identification process undertaken by Canadian law enforcement. The identification was verified through analysis of minute details, including Rossman's shoes and distinct characteristics of clothing and attire. In addition, many photographs of Rossman were taken near the area of the criminal conduct and Rossman was arrested in Toronto for disturbing the peace for protesting against the G-20 Summit on June 27, 2010. This further evidences he was present in Toronto at the time of the listed offenses on June 26, 2010.

Rossman also argues that bail is required because the litigation process could be lengthy and that is a special circumstance requiring release. The extradition hearing is set for April 17, 2013. Considering the Rules of Evidence and Criminal Procedure do not apply in extradition hearings, there will not be an unusual delay in the proceedings that would constitute "special circumstances."

The issue of dual criminality raised by Rossman also does not enhance his argument that "special circumstances" exist based on the likelihood of success. In regard to the

Mischief offense under the CCC, A.R.S. § 13-1602(A) and (B)(2) provides a felony for criminal damaging by defacing or damaging property of another person or tampering with property of another person so as substantially to impair its function or value if the damage is $5,000 or more. Damage in excess of $5,000 was alleged in the charges against Rossman filed in Canada. Dual criminality of all charges does not need to be established at this point. The dual criminality of a single charge will still require extradition and the analogous Arizona statute negates Rossman's argument regarding the likelihood of success based on dual criminality.

### C. Rossman's Other Arguments Are Without Merit.

Whether Rossman will be released in Canada does not bear on the issue of bail in this case. Release for other alleged co-conspirators were obtained after those individuals waived extradition and were released in Canada after answering the charges. The Bail Reform Act does not apply to extraditions and the standards of proof for detention and setting bail are different when facing charges in the country they are filed, much like the rights and burdens afforded to an individual charged in with a crime in the United States who is found in the United States. And as stated above, alleged co-conspirator Quinn McCormic was only released after waiving extradition and having already made arrangements to return to Canada the next day. And unlike Rossman, McCormic has no felony convictions in the United States.

Rossman's argument that a complaint was not filed until February, 2013 is misleading. The original complaint in Canada was filed on December 20, 2010. Furthermore, Rossman's argument that he has not hid from authorities is ignores the facts of the case because he wore a mask while committing the offenses for which he's charged, he returned to the United States immediately after being arrested in Canada for disturbing the peace, and relocated to Arizona. Those factors weigh heavily against a finding that "special circumstances" exist to allow the defendant to be released on bond.

## IV. Conclusion

Rossman has not demonstrated "special circumstances" that would justify bond in this case, let alone a $5,000 bond he would have to borrow money to satisfy. Even under the Bail Reform Act a bond amount must be an amount that assures appearance, not simply what the defendant can muster. Given the strong presumption against bail in an extradition hearing, any bond amount the court may set must reflect the strong interest in assuring the defendant's appearance. Furthermore, Rossman cannot be relied upon to return to Canada. His request for release pending extradition proceedings in this matter does not constitute a special circumstance and the analysis should based in part on his ability to return to Canada, as was the case in McCormic. Rossman's statement that he is indigent and the fact he did not waive extradition and has a felony record defeats his argument he should be given bond because other alleged co-conspirators, namely McCormic, were released after waiving extradition and returning to Canada.

In addition, even if the court determines he may be a suitable bond candidate under normal circumstances does is not enough to release the defendant based on *Wright* and the decisions that followed. Furthermore, he has been convicted of felony disorderly in Pima County after committing the alleged violations in Canada and his crimes in Canada show a disregard for the law. Finally, Rossman's release on bail would have negative implications for U.S. foreign policy in cases where the United States seeks extradition of fugitives from Canada. In sum, Rossman has a heavy burden to meet in proving the special circumstances that would vitiate the strong presumption against bail and he has failed to do so. Based on the foregoing, the United States requests that the fugitive's request for bail be denied. The United States also requests that if the court is inclined to release Rossman it state specific special circumstances shown.

///

Respectfully submitted this 20th day of March, 2013.

JOHN S. LEONARDO
United States Attorney
District of Arizona

s/*Ryan P. DeJoe*

RYAN P. DEJOE
Assistant U.S. Attorney

Copy provided on this date to:

Ryan Moore, Esq.