JOHN S. LEONARDO
United States Attorney
District of Arizona
RYAN P. DEJOE
Assistant United States Attorney
Evo A. DeConcini Federal Courthouse
405 West Congress Street, Suite 4800
Tucson, Arizona 85701
Telephone: (520) 620-7300
ryan.dejoe@usdoj.gov
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| IN THE MATTER OF THE EXTRADITION OF DANE EDWARD ROSSMAN | NO. 13-10092M-DTF<br><br>MEMORANDUM OF LAW REGARDING EXTRADITION |

The government, by and through its attorneys, John S. Leonardo, United States Attorney for the District of Arizona, and Ryan P. DeJoe, Assistant U.S. Attorney, acting on behalf of the Canadian government, hereby submits the following Memorandum of Law Regarding Extradition. The extradition hearing is currently set for Wednesday, April 17, 2010, at 11:00 a.m.

The fugitive, Dane Rossman, ("Rossman"), was arrested on February 20, 2013, pursuant to a complaint and warrant issued by U.S. Magistrate Judge Jacqueline Rateau, seeking the his extradition to Canada pursuant to an extradition treaty between Canada and the United States, 27 UST 983, TIAS 8237 (hereinafter, "the Treaty"), and pursuant to 18 U.S.C. 3184 *et seq*. Magistrate Judge Rateau signed the warrant for arrest for extradition on February 19, 2013. This Court ordered the defendant be detained pending the extradition hearing. The fugitive is currently in the custody of the United States Marshal Service.

Authorities in Canada seek the extradition of Rossman to answer the following charges under the Criminal Code of Canada (CCC):

(1) Mischief - CCC § 430(3)

(2) Mischief Endangering Life - CCC § 430(2)

(3) Disguise with the Intent to Commit an Indictable Offense - CCC § 351(2)

Article 2 of the Treaty provides for the extradition of persons accused or convicted of these crimes. The Court of the Province of Ontario in Canada had issued a warrant for Rossman's arrest on December 20, 2010 for this purpose.

The Government of Canada timely submitted a formal request for surrender of Rossman, supported by appropriate documents, to the Department of State, who provided them to the Department of Justice's Office of International Affairs. That office forwarded original documents to undersigned counsel, who will deliver them to this Court's chambers. The following is a description of the original documents:

1) Diplomatic Notes No. 0232 and 0240 (Referral of Extradition Request), bound with a gold ribbon and gold seal, dated November 14, 2012, to United States Secretary of State John F. Kerry from Canada, bearing the Declaration of Alexis Blane, Attorney Adviser in the Office of Legal Adviser for the Department of State, as well as her signature and that of the Secretary of State, dated February 14, 2013. Diplomatic Note No. 0232 sets forth that the Rossman's offenses are extraditable under the Treaty, which is in full force and effect. (Declaration, p. 2.) The Extradition Request also describes Rossman's personal data as well as that the offenses took place during the G-20 Economic Summit in Toronto, Ontario, Canada in June, 2010. Directly under the Declaration is a copy of the Treaty.

2) The Extradition Request, dated November 14, 2012, bound and bearing red ribbons and seal, with the signature on the first page of Sylvia D. Johnson, Consul General, certifying the documents. Following that is a Certificate of Authentication, bearing red ribbons and seal, from Cathy Chalifour, Counsel for the International Assistance Group, Department of

Justice of Canada, certifying that the affidavits prepared by Roger Shallow, Counsel with the Ministry of the Attorney General of Ontario, prepared on October 31, 2012, and Peter Trimble, Detective Constable with the Toronto Police, prepared on October 29, 2012, are true copies and that the accompanying signatures are by individuals with the proper authority to attest to the affidavits.

3) An 11-page Affidavit of Roger Swallow, Counsel with the Ministry of the Attorney General, Ontario, Canada, describing the Canadian prosecutorial structure and the process undertaken to ensure safety and to investigate any crimes during the G-20 summit in Toronto (pp 1-3); Canada's criminal code and criminal process (pp 3-4); and the facts supporting the allegations against Rossman and applicable sections of the CCC (pp 5-11).

4) A 116-page Affidavit of Peter Trimble, a police officer with the Toronto Police Service.  The affidavit outlines Rossman's alleged violations, on June 26, 2010, which stem from himself and Joel Bitar, wearing masks over their faces, throwing a sign through a Starbucks window thereby damaging property and endangering the safety of patrons inside the establishment.  The affidavit includes photographic evidence, expert identification analysis, border crossing history, and documents surrounding Rossman's arrest for breach of the peace in Toronto on June 27, 2010, in support of the charges.

The Office of International Affairs (OIA) transmitted these original documents to the District of Arizona. On February 25, 2013, copies were given to Rossman's assigned counsel for the extradition, Ryan Moore.

The government waited to file this memorandum because of the pending bail motion and the possibility Rossman would waive extradition.  However, the government has heard from defense counsel that Rossman will not be waiving extradition to Canada.  By statute, this Court must hold an extradition hearing to consider the documentation provided by Canada and determine whether "it is sufficient to sustain the charge under the provisions of the proper treaty or convention."  18 U.S.C. § 3184.  *See also Vo v. Benov*, 447 F.3d 1235,

1237-38 (9th Cir. 2006) (generally explaining process). In so doing, this Court determines primarily whether there was "probable cause to believe" he committed the offense. *Barapind v. Enomoto*, 400 F.3d 744, 747, 749 (9th Cir. 2005) (en banc). Because the law regulating extradition differs from ordinary criminal or civil proceedings, this memorandum provides information about the nature of the hearing and the relevant issues.

**I.     Nature of the Extradition Hearing**

     A.     <u>Purpose of Hearing</u>

The purpose of an extradition hearing required by 18 U.S.C. § 3184 is to determine whether the person arrested pursuant to a complaint in the United States on behalf of a foreign government is subject to surrender to the requesting country under the terms of the pertinent treaty and relevant law. If this Court finds the fugitive extraditable, it certifies that conclusion to the Secretary of State, who decides whether to surrender him. This Court incorporates its factual findings and conclusions of law in a "certification of extraditability," which is forwarded to the Department of State for disposition by the Secretary of State. The Secretary ultimately decides whether to surrender the fugitive. *See also Vo*, 447 F.3d at 1237.

Further, an extradition proceeding is not a criminal case. *See Kamrin v. United States*, 725 F.2d 1225, 1227-1228 (9th Cir. 1984); *Martin v. Warden, Atlanta Penitentiary*, 993 F.2d 824, 829 (11th Cir. 1993). Similarly, neither the Federal Rules of Criminal Procedure or the Federal Rules of Evidence apply to international extradition proceedings. Fed R. Crim. P. 1(a)(5)(A); Fed. R. Evid. 1101 (d)(3); *See also, Afanesjev v. Hurlburt*, 418 F.3d 1159, 1164-65 (11th Cir. 2005); *Melia v. United States*, 667 F.2d 300, 302 (2nd Cir. 1981); *Bovio v. United States*, 989 F.2d 255, 259 n.3 (7th Cir. 1993).

     B.     <u>Elements Necessary for Extradition</u>

A determination of extraditability is proper if: (1) the judicial officer was authorized to conduct extradition proceedings; (2) the court had jurisdiction over the fugitive; (3) the

applicable treaty was in full force and effect; (4) the crimes for which surrender was requested were covered by the applicable treaty; and (5) there was competent legal evidence to demonstrate probable cause that the fugitive committed the crime charged, including that the person before the court is the one accused of the crime. *See Zanazanian v. United States*, 729 F.2d 624, 625-26 (9th Cir. 1984); *Gusikoff v. United States*, 620 F.2d 459, 462 (5th Cir. 1980); *Ornelas v. Ruiz,* 161 U.S. 502 (1896); *Bingham v. Bradley,* 241 U.S. 511 (1916); *McNamara v. Henkel*, 226 U.S. 520 (1913); *United States v. Barr*, 619 F.Supp. 1068, 1070 (E.D.Pa. 1985).

      1.    *Authority of the judicial officer*.

The extradition statute, 18 U.S.C. § 3184, authorizes a broad class of judicial officers to hear extradition cases. Federal judges are clearly authorized by the statute to hear and decide extradition cases and the statute provides that magistrates may do so if permitted by the rules of their court. *See Ward v. Rutherford*, 921 F.2d 286 (D.C. Cir. 1990) (rejecting constitutional challenge to magistrate's authority). In the District of Arizona, the Local Rules of Practice for U.S. District Court provide that "full time magistrate judges in the district of Arizona shall perform the following duties . . . (15) Conduct extradition proceedings in accordance with 18 U.S.C. § 3184." L.R.Crim. 57.6 (d)(15). Thus, magistrate judges in this Court have authority to hear extradition matters.

      2.    *Jurisdiction over the fugitive*.

Although the Supreme Court included personal jurisdiction as an essential element for reasons of analytic completeness, the question of jurisdiction has not been a decisive issue in extradition cases in modern times. If the fugitive is before the court, the court has personal jurisdiction. *See In re Pazienza,* 619 F.Supp. 611 (S.D.N.Y. 1985). Thus, this Court has jurisdiction over Rossman in this case.

3.  *Treaty in full force and effect.*

The extradition statute, 18 U.S.C. § 3184, limits extradition to instances in which a treaty is in force between the requesting state and the requested state. *See, e.g., Argento v. Horn,* 241 F.2d 258 (6th Cir. 1957). As part of its proof in this case, the government has provided a declaration from an attorney in the Office of the Legal Adviser of the Department of State attesting that the U.S./Canada Treaty is in full force and effect. (*See* Declaration of Alexis Blane.) The Department of State's opinion on this issue is entitled to deference. *Galanis v. Pallanck*, 568 F.2d 234 (2nd Cir. 1977); *Sayne v. Shipley*, 418 F.2d 679 (5th Cir. 1969). Thus, the Treaty is in full force and effect.

4.  *Crime in the requesting state covered by Treaty*.

The Treaty provides for the return of fugitives charged with or convicted of a crime in the state requesting extradition. The charges against the fugitive are pending in Canada, specifically, the Province of Ontario. The defendant has been charged with three offenses.

Dual criminality (that the conduct at issue be a crime in both the requesting and requested countries) is not required *per se* for extradition; it need be found only if the treaty so requires. *Factor v. Laubenheimer*, 290 U.S. 276 (1933); *In re Assarsson*, 635 F.2d 1237 (7th Cir. 1980). In this case, dual criminality is required by Article 2(1) of the Treaty. Article 2(1) of the Treaty provides that extradition shall be granted for conduct which constitutes an offense punishable by the laws of both Canada and the United States by imprisonment for a term exceeding one year. (*See* Declaration of Alexis Blane, p.2).

A requesting country is not obliged to produce evidence on all elements of a criminal offense nor is it required to establish that its crimes are identical to the crimes of the requested country. *Kelly v. Griffin*, 241 U.S. 6, 15 (1916). "The primary focus of dual criminality requires has always been on the conduct charged; the elements of the analogous offenses need not be identical." *Clarey v. Gregg*, 138 F.3d 764, 766 (9th Cir. 1998). "When the laws of both the requesting and the requested party appear to be directed to the same

basic evil, the statutes are substantially analogous, and can form the basis of dual criminality." *Id.* (internal citations and quotations omitted) *see also In re Russell*, 789 F.2d 801, 803 (9th Cir.1986) (upholding extradition for conspiracy even though overt act was not required in requesting nation because request alleged several overt acts). The Supreme Court has stated:

> The law does not require that the name by which the crime is described in the two countries shall be the same; nor that the scope of liability shall be coextensive, or, in other respects, the same in the two countries. It is enough if the particular act charged is criminal in both jurisdictions.

*Collins v. Loisel*, 259 U.S. 309, 312 (1922). *See also Cucuzzella v. Keliikoa*, 638 F.2d 105, 108 (9th Cir. 1981); *Man-Seok Choe v. Torres*, 525 F.3d 733, 737 (9th Cir. 2008); *Messina v. United States,* 728 F.2d 77 (2nd Cir. 1984); *United States v. Stockinger*, 269 F.2d 681, 687 (2nd Cir. 1959); *Di Stefano v. Moore*, 46 F.2d 308 (E.D.N.Y.), *aff'd*, 46 F. 2d 310 (2nd Cir. 1930). In comparing the foreign offense with United States law to decide the question of dual criminality, the magistrate may consider federal law, the law of the state in which the hearing is held, and the law of a preponderance of the states. *Cucuzzella*, 638 F.2d at 107. The court's analysis should "approach challenges to extradition with a view toward finding the offense within the treaty." *McElvy v. Civiletti*, 523 F. Supp. 42, 48 (S.D.Fla. 1981).

Here, the fugitive has been charged in Canada with three offenses:

(1) Mischief - CCC § 430(3)

(2) Mischief Endangering Life - CCC § 430(2)

(3) Disguise with the Intent to Commit an Indictable Offense - CCC § 351(2)

Dual criminality exists for the mischief offenses. Mischief, in general, is defined under CCC § 430:

> Every one commits mischief who willfully:
> (a) destroys or damages property;
> (b) renders property dangerous, useless, inoperative or ineffective;
> (c) obstructs, interrupts or interferes with the lawful use, enjoyment or operation of property; or

      (d) obstructs, interrupts or interferes with any person in the lawful use, enjoyment or operation of property

(*See* Affidavit of Roger Shallow, p. 7.)

Schedule Item 24 lists "willful injury to property" as an offense requiring extradition pursuant to Article 2(1) if the penalties for the prohibited conduct are punishable by both countries by a term of imprisonment exceeding one year. Under CCC § 430, subsection (3) states that committing mischief to property exceeding $5,000 in value is subject to 10 years imprisonment. Subsection (2) states that committing mischief that causes actual danger to life is subject to life imprisonment. (*Id*.)

The Arizona Revised Statutes contains substantially analogous statutes that are punishable by over one year. CCC § 430(3) is equivalent to A.R.S. § 13-1602(A)(1) and (B)(3) provides a class 5 felony, which carries two years imprisonment as a potential penalty, for criminal damaging by defacing or damaging property of another person or tampering with property of another person so as substantially to impair its function or value if the damage is between $2,000 and $10,000. CCC § 430(2) is comparable to A.R.S. § 13-1201(A) which states a person commits endangerment by recklessly endangering another person with a substantial risk of imminent death or physical injury. Endangerment involving a substantial risk of imminent death is a class 6 felony, punishable up to one and one-half years imprisonment. The government concedes that Disguise with the Intent to Commit an Indictable Offense has no substantially analogous federal or Arizona state statute and is not a covered under the schedule of offenses attached to the treaty.

These statutes proscribe the same type of criminal conduct as the Canadian offenses. Therefore, they criminalize similar conduct even if every element is not mirrored. Dual criminality exists for the mischief charges in the Canadian request.

5. *Competent legal evidence demonstrating probable cause*.

The level of proof for extradition is the familiar domestic criminal law requirement of "probable cause" to believe the defendant committed the crime alleged. *Zanazanian*, 729 F.2d at 624 ("The evidence must demonstrate probable cause to believe that the accused committed the crime charged.") (citing *Merino v. U.S. Marshal*, 326 F.2d 5, 11-12 (9th Cir. 1963)); *see also Sindona v. Grant*, 619 F.2d 167 (2nd Cir. 1980) (standard of proof in extradition proceedings is that of probable cause as defined in federal law). Probable cause requires sufficient evidence to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief in the guilt of the accused. *Coleman v. Burnett*, 477 F.2d 1187, 1202 (D.C. Cir. 1973).

"The function of the committing magistrate is to determine whether there is competent evidence to justify holding the accused to await trial, and not to determine whether evidence is sufficient to justify a conviction." *Collins*, 259 U.S. at 316; *see also* Article 3 of the Treaty ("Extradition shall be granted only if the evidence be found sufficient, according to the laws of the requested Party, . . to justify the committal for trial of the person sought if the offense of which he has been accused had been committed in that place . . .") Accordingly, "the country seeking extradition is not required to produce all its evidence at an extradition hearing and it is not [this Court's] role to determine whether there is sufficient evidence to convict the accused. The magistrate does not weigh conflicting evidence and make factual determinations but, rather, determines only whether there is competent evidence to support the belief that the accused has committed the charged offense." *Quinn v. Robinson*, 783 F.2d 776, 815 (9th Cir. 1986) (citation omitted).

The extradition hearing is not a trial, but simply an inquiry into probable cause. "An extradition hearing is not the occasion for an adjudication of guilt or innocence." *Messina v. United States*, 728 F.2d 77, 80 (2nd Cir. 1984), as cited in *Ward v. Rutherford,* 921 F.2d 286, 287 (D.C. Cir. 1990). Rather, as stated above, the proceeding is essentially a

"preliminary examination to determine whether a case is made out which will justify the holding of the accused and his surrender to the demanding nation." *United States v. Kember*, 685 F.2d 451, 455 (D.C. Cir. 1982), as cited in *Ward v. Rutherford,* 921 F.2d at 287. "A magistrate presiding over the hearing thus performs an assignment in line with his or her accustomed task of determining if there is probable cause to hold a defendant to answer for the commission of an offense. *See* Fed. R. Crim. P. 5.1 (preliminary examination by federal magistrate)." *Ward v. Rutherford,* 921 F.2d at 287. *See also Fernandez v. Phillips*, 268 U.S. 311, 312 (1925); *United States ex rel. Sakaguchi v. Kaulukukui*, 520 F.2d 726, 730-31 (9th Cir. 1975) (magistrate's function is to determine whether there is "any" evidence establishing reasonable or probable cause); *Sainez v. Venables,* 588 F.3d 713, 717-18 (9th Cir. 2009)*; Merino*, 326 F.2d at 11.

As discussed later in this memorandum, the rules of evidence are inapplicable, unsworn hearsay is admissible, and this Court's probable cause determination may be based on documentary evidence alone.

There is probable cause to believe Rossman committed the charged offenses. He, along with Joel Bitar, threw a sign through the window of the Starbucks at 450 Yonge St. in Toronto, Ontario, Canada on June 26, 2010. Rossman was correctly identified as the person who committed the offense specified in the Canadian extradition request. (*See* Affidavit of Peter Trimble, pp. 1-9; Exhibit C, Affidavit of William McGarry, pp. 1-64). Mr. McGarry has an extensive background in image comparison. There were photographs and video still frame shots taken of the crime being committed. Mr. McGarry compared those photographs to numerous photographs of Rossman, including his booking photo after being arrested in Toronto the next day. (*Id.* at 59-63). Mr. McGarry also noted several specific comparisons of Rossman's clothing and other attire that aided his identification. (*Id.*) Mr. McGarry concluded that Rossman threw the sign through the window of the Starbucks on June 26, 2010. (*Id.* at 64).

Other evidence also demonstrates that Rossman was in Toronto for the G-20 summit. His crossing history shows he entered Canada on June 24, 2010, through the Peace Bridge in Buffalo, New York. (Affidavit of Peter Trimble, Exhibit D). He exited Canada through the Rainbow Bridge in Niagara Falls, New York on June 28, 2010. (*Id.*, Exhibit E). He was arrested for breach of the peace in Toronto on June 27, 2010, one day after the alleged incident at Starbucks. (*Id.,* Exhibit F). He identified himself as Dane Rossman for that arrest and his photograph was taken and used to compare to other images taken in Toronto and specifically of the alleged incident.

In short, the comprehensive information in the extradition documentation provided by Canada, along with identity evidence, provides probable cause to believe Rossman committed the offense alleged by Canada in its request.

C. Role of the Judicial Officer

"An extradition court – in this case the magistrate judge – exercises very limited authority in the overall process of extradition. As we have explained, extradition is a matter of foreign policy entirely within the discretion of the executive branch, except to the extent that the statute interposes a judicial function." *Vo*, 447 F.3d at 1237 (internal quotations omitted), citing *Lopez-Smith v. Hood*, 121 F.3d 1322, 1326 (9th Cir.1997). This Court considers the evidence presented on behalf of the requesting state, here Canada, and determines whether there is probable cause to believe the defendant committed the offense alleged, and whether the other required elements (jurisdiction, etc.) have been proven. "If the judicial officer determines that there is probable cause, [that officer] *is required to certify* the individual as extraditable to the Secretary of State." *Vo*, 447 F.3d at 1237 (emphasis in original).

This Court makes written findings of fact and conclusions of law, including separate findings for each offense as to which extradition is sought. *Shapiro v. Ferrandina*, 478 F.2d 894 (2nd Cir. 1973) (separate findings). Factual determinations would be reviewed for clear

error. *See Mainero v. Gregg*, 164 F.3d 1199, 1205 (9th Cir. 1999) ("Factual determinations by a ... judge in an extradition proceeding are reviewed for clear error."). This is generally called a Certification of Extraditability.[1]

"After an extradition magistrate certifies that an individual can be extradited, it is the Secretary of State, representing the executive branch, who ultimately decides whether to surrender the fugitive to the requesting country. The authority of a magistrate judge serving as an extradition judicial officer is thus limited to determining an individual's eligibility to be extradited, which he does by ascertaining whether a crime is an extraditable offense under the relevant treaty and whether probable cause exists to sustain the charge." *Vo*, 447 F.3d at 1237. If the fugitive is determined to be extraditable, he or she is committed to the custody of the United States Marshal to await the determination by the Secretary of State and transfer to the representatives of the requesting state. This Court's Certification of Extraditability is provided to the Secretary of State together with a copy of any evidence presented on behalf of the fugitive. 18 U.S.C. § 3184.

II. **Distinctive Features of the Law of Extradition**

  A.  Extradition Hearing Not a Criminal Proceeding

An extradition hearing is not a criminal proceeding; its purpose is merely to decide probable cause, not guilt or innocence. *Neely v. Henkel,* 180 U.S. 109 (1901); *Benson v. McMahon*, 127 U.S. 457, 463 (1888); *Simmons v. Braun*, 627 F.2d 635 (2nd Cir. 1980). Thus, the person whose extradition is sought is not entitled to the rights available in a criminal trial at common law. *Charlton v. Kelly*, 229 U.S. 447, 461 (1931); *Glucksman v. Henkel*, 221 U.S. 508, 512 (1911); *United States v. Stockinger*, 269 F.2d 681, 687 (2nd Cir. 1959). For example, a fugitive has no right to discovery or even to cross-examination if any

---

[1] If this Court at the extradition hearing finds probable cause to extradite, then the government will submit a proposed Certification of Extraditability after the hearing, for this Court's approval and signature.

witnesses testify at the hearing and his or her right to present evidence is severely limited. *Messina v. United States*, 728 F.2d 77 (2nd Cir. 1984). In addition, the Sixth Amendment's guarantee to a speedy trial, limited by its terms to criminal prosecutions, does not pertain to extradition proceedings. *Jhirad v. Ferrandina*, 536 F.2d 478, 485 n.9 (2d Cir. 1976).

### B. Federal Rules of Criminal Procedure and Evidence Do Not Apply

The Federal Rules of Criminal Procedure do not apply to extradition proceedings. Fed.R.Crim.P. 54(b)(5) provides that "[t]hese rules are not applicable to extradition and rendition of fugitives." The Federal Rules of Evidence are also inapplicable. Fed.R. Evid. 1101(d)(3) provides that "[t]he rules (other than with respect to privileges) do not apply . . . [to p]roceedings for extradition or rendition." *See also Merino*, 326 F.2d at 12; *Simmons v. Braun*, 627 F.2d 635, 636-37 (2nd Cir. 1980) (declining to apply the exclusionary rule and discussing differences between extradition hearings and criminal proceedings).

Rather than following standard rules, "[u]nique rules of wide latitude govern reception of evidence in Section 3184 hearings." *Sayne*, 418 F.2d at 685 (citation omitted). Among these unique rules at extradition proceedings are the following rules regarding admissibility and sufficiency of hearsay and documentary evidence.

Hearsay evidence is admissible at extradition hearings and may support a finding of extraditability, as the Ninth Circuit has noted. *Zanazanian*, 729 F.2d at 626; *see also Collins*, 259 U.S. at 317; *O'Brien v. Rozman*, 554 F.2d 780, 783 (6th Cir. 1977); *In re David*, 395 F.Supp. 803, 806 (E.D. Ill. 1975); *United States ex rel. Eatessami v. Marasco*, 275 F. Supp. 492, 494 (S.D.N.Y. 1967). The evidence need not be made under oath, and "unsworn statements of absent witnesses may be acted upon by the committing magistrate, although they could not have been received by him under the law of the state on preliminary examination." *Zanazanian*, 729 F.2d at 626.

This Court may make the determination of extraditability solely based on the documentary evidence presented. Indeed, apart from testimony concerning identity,

*Fernandez v. Phillips*, 268 U.S. 311 (1924) (testimony concerning identity admissible at extradition hearing), extradition treaties do not appear to contemplate the introduction of testimony of live witnesses at extradition proceedings because to do so "would defeat the whole object of the treaty." *Bingham*, 241 U.S. at 517.  Thus, a finding of extraditability may be based entirely on documentary evidence. *Shapiro v. Ferrandina, supra*, 478 F.2d at 902-03; *O'Brien v. Rozman, supra*, 554 F.2d at 783; *In re Edmonson*, 352 F. Supp. 22, 24 (D. Minn. 1972).

"With regard to the admissibility of evidence, the general United States extradition law requires only that the evidence submitted be properly authenticated." *Emami v. U.S. District Court*, 834 F.2d 1444, 1451 (9th Cir. 1987) (as quoted in *Barapind*, 400 F.3d at 748).  The authentication requirements for foreign documentary evidence are contained in 18 U.S.C. § 3190, which specifies that "the certificate of the principal diplomatic or consular officer of the United States resident in such foreign country shall be proof that [submitted documents] are authenticated in the manner required." *Barapind*, 400 F.3d at 748; *see also Cucuzzella v. Keliikoa*, 638 F.2d 105 (9th Cir. 1981) (18 U.S.C. § 3190 governs the admissibility of statements submitted by the requesting state and is satisfied by a certification that accords with the terms of the statute); *Collins v. Loisel, supra. See also* Treaty, Article 10, Section (2) (discussing admissibility of extradition documents).  Here, the proper certifications have been provided.

C. <u>Limitations on Fugitive's Evidence</u>

Because this extradition proceeding is solely to determine whether probable cause exists, the fugitive may not turn the extradition hearing into a trial.  "[A] fugitive facing extradition can present his own evidence to explain away the requesting government's evidence of probable cause." *Barapind*, 400 F.3d at 749.  However, the fugitive's evidence must rise to the level of completely "obliterating" probable cause to be admissible and defeat extradition.  It cannot merely contradict, nor can the fugitive raise a defense. *Id.*, citing

*Singh*, 170 F.Supp.2d at 994; *see also Mainero v. Gregg*, 164 F.3d 1199, 1205, 1207 n. 7 (9th Cir. 1999) ("Generally, evidence that explains away or completely obliterates probable cause is the only evidence admissible at an extradition hearing, whereas evidence that merely controverts the existence of probable cause, or raises a defense, is not admissible."); *Hooker v. Klein,* 573 F.2d 1360, 1368 (9th Cir. 1978) (a fugitive's right to controvert the evidence introduced against him is "limited to testimony which explains rather than contradicts the demanding country's proof" and he is "not permitted to introduce evidence on the issue of guilt or innocence"). This Court does not weigh conflicting evidence. *Quinn v. Robinson*, 783 F.2d 776, 815 (9th Cir. 1986) (extradition magistrate "does not weigh conflicting evidence and make factual determinations but, rather, determines only whether there is competent evidence to support the belief that the accused has committed the charged offense").

In short, the fugitive cannot raise affirmative defenses or raise other issues that require a trial. *See Desmond v. Eggers*, 18 F.2d 503, 505 (9th Cir. 1927) ("All of the authorities agree . . . that matters which are only a defense to a trial on the merits are not admissible"); *Extradition of Mainero*, 990 F. Supp. 1208, 1218 (S.D. Cal. 1997) ("Evidence that conflicts with that submitted on behalf of the demanding party is not permitted, nor is impeachment of the credibility of the demanding country's witnesses."). Rather, a fugitive must wait to raise those issues in the requesting country when he stands trial. *Barapind*, 400 F.3d at 749 ("The court concluded, however, that 'the credibility of Makhan Ram's recantation cannot be determined without a trial,' *Singh*, 170 F.Supp.2d at 1024, which would exceed the limited mandate of an extradition court in making a determination of probable cause, as opposed to ultimate guilt."). *See also Matter of Sindona*, 450 F. Supp. 672, 685 (S.D.N.Y. 1978), *aff'd*, 619 F.2d 167 (2nd Cir. 1980) ("The decisions are emphatic that the extraditee cannot be allowed to turn the extradition hearing into a full trial on the merits.") (citing *In re Wadge*, 15 F. 864, 866 (S.D.N.Y 1883), as cited in *Collins*, 259 U.S. at 316, and

*Charlton*, 229 U.S. at 461). In *Matter of Sindona*, the New York court quoted *In re Wadge*, where the district court rejected the fugitive's argument that he should be given an extensive hearing in the extradition proceedings, because that would defeat the foreign government's rights under the treaty to obtain the fugitive for trial, "in plain contravention of the intent and meaning of the extradition treaties." *Matter of Sindona*, 450 F.Supp at 685 (quoting *In re Wadge*, 15 F. at 866).

Admission of evidence proffered by the fugitive at an extradition proceeding is left to the sound discretion of the court, guided by the principle that evidence of facts contradicting the demanding country's proof or establishing a defense may properly be excluded. *Hooker*, 573 F.2d at 1369 (citing *Charlton*, 229 U.S. at 456; *Shapiro v. Ferrandina*, 478 F.2d at 901); *see also United States ex rel Petrushansky v. Marasco*, 325 F.2d 562, 567 (2nd Cir. 1963) (and cases cited therein). As explained below, some matters are clearly impermissible.

D.   Impermissible Defenses

Defenses against extradition which "savor of technicality" should be rejected by a court as they are peculiarly inappropriate in dealings with a foreign nation. For example, a variance between the charges pending in the foreign state and the complaint filed on behalf of that state in our federal courts is not a defense to surrender. *Glucksman v. Henkel*, 221 U.S. 508, 513-14 (1910); *see also Bingham*, 241 U.S. at 517; *United States ex rel. Bloomfield v. Gengler*, 507 F.2d 925, 927-1024 (2nd Cir. 1974); *Shapiro v. Ferrandina, supra*, 478 F.2d at 904; *In re Edmonson*, 352 F. Supp. 22, 24 (D. Minn. 1972).

1.   *Conflicting evidence*.

The fugitive's grounds for opposing the extradition request are severely circumscribed. *Hooker*, 573 F.2d at 1368; *First National City Bank of New York v. Aristeguieta*, 287 F.2d 219, 222 (2nd Cir. 1960); *In Re Shapiro*, 352 F. Supp. 641, 645 (S.D.N.Y. 1973). He may not introduce evidence which: 1) simply conflicts with the

16

evidence submitted on behalf of the demanding state, *Barapind*, 400 F.3d at 749; *Singh*, 170 F.Supp.2d at 994; *Mainero v. Gregg*, 164 F.3d 1199, 1205, 1207 n. 7 (9th Cir. 1999); *Collins*, 259 U.S. at 315-17; 2) establishes an alibi, *Abu Eain v. Adams*, 529 F.Supp 685 (N.D.Ill. 1980); 3) sets up an insanity defense, *Hooker v. Klein, supra*; or 4) impeaches the credibility of the demanding country's witnesses, *Barapind, supra*; *In re Locatelli*, 468 F.Supp. 568 (S.D.N.Y. 1979). The fugitive is limited to introducing evidence which "explains away" or "obliterates" probable cause. *See* Section II.C, above.

    2. *Trial in requesting country on other charges.*

A fugitive's contention that he or she will be tried in the requesting country for crimes other than those for which extradition will be granted, or that surrender is being requested for political offenses, must be rejected as baseless, without merit, or beyond the responsibility of the court, because the United States Government does not presume that the requesting government will seek a trial in violation of a treaty. *Bingham*, 241 U.S. at 514. As the district court noted in *Gallina v. Fraser*, 177 F.Supp. 857, 867 (D.Conn. 1959): "the Secretary of State of the United States would not authorize the surrender of a fugitive . . . to be punished for non-extraditable crimes, and . . . any extradition would be so conditioned as to negate this possibility."

    3. *Motivation of requesting country: rule of non-inquiry.*

This Court may not look behind the extradition request to the motives of the government of the demanding country. The Ninth Circuit has long adhered to the "Rule of Non-Inquiry," which provides that it is the role of the Secretary of State, not the courts, to determine whether extradition should be denied on humanitarian grounds or on account of the treatment that the fugitive is likely to receive upon his return to the requesting state. *See Barapind*, 225 F.3d at 1105-06 (noting acceptance of the general rule). "Undergirding this principle is the notion that courts are ill-equipped as institutions and ill-advised as a matter of separation of powers and foreign relations policy to make inquiries into and

pronouncements about the workings of foreign countries' justice systems. The State Department is in a superior position to consider the consequences of a nonextradition decision upon foreign relations than the courts and it has diplomatic tools, not available to the judiciary, which it can use to insure that the requesting state provides a fair trial." *Matter of Requested Extradition of Smyth*, 61 F.3d 711, 714 (9th Cir. 1995) (internal quotations and citation omitted). *See also In re Lincoln*, 228 Fed. 70, 74 (E.D.N.Y. 1915) ("It is not a part of the court proceedings nor of the hearing upon the charge of the crime to exercise discretion as to whether the criminal charge is a cloak for political action, nor whether the request is made in good faith. Such matters should be left to the Department of State . . .").

    4.   *U.S. constitutional protections not required in criminal proceedings abroad*.

An extraditing court will generally not inquire into the procedures or treatment that may await a surrendered fugitive in the requesting country. *Arnbjornsdottir-Mendler v. United States*, 721 F.2d 679, 683 (9th Cir. 1983), citing *Gallina v. Fraser*, 278 F.2d 77, 78 (2d Cir. 1960); *Garcia-Guillern v. United States*, 450 F.2d 1189, 1192 (5th Cir. 1971). *See also Holmes v. Laird*, 459 F.2d 1211, 1219 (D.C. Cir. 1972) ("a surrender of an American citizen by treaty for purposes of a foreign criminal proceeding is unimpaired by an absence in the foreign judicial system of safeguard in all respects equivalent to those constitutionally enjoined upon American trials"); *Ahmad v. Wigen*, 910 F.2d 1063, 1072-73 (2nd Cir. 1990) (citing *Sindona v. Grant*, 619 F.2d 167, 174 (2nd Cir. 1980); *Matter of Extradition of Tang Yee-Chun*, 674 F.Supp. 1058, 1068-69 (S.D.N.Y. 1987); *Neely*, 180 U.S. at 109; *Pfeifer v. United States Bureau of Prisons,* 468 F. Supp. 920 (S.D. Cal. 1979), *aff'd* 615 F.2d 873 (9th Cir. 1980). Another court has stated:

> Regardless of what constitutional protections are given to persons held for trial in the courts of the United States or of the constituent states thereof, those protections cannot be claimed by an accused whose trial and conviction have been held or are to be held under the laws of another nation, acting according to its traditional processes and within the scope of its authority and jurisdiction.

*Gallina v. Fraser*, 177 F. Supp. 856, at 866 (D. Conn. 1959), *aff'd,* 278 F.2d 77 (2d Cir. 1960).

### E. Extradition Treaties Are To Be Liberally Interpreted

Extradition treaties must be liberally construed to effect their purpose, namely, the surrender of fugitives for trial for their alleged offenses. *Valentine v. United States ex rel. Neidecker,* 299 U.S. 5, 14 (1936); *Factor v. Laubenheimer*, 290 U.S. 276, 293, 301 (1933). In discussing the application of this rule, the Southern District of Florida stated:

> [A] narrow and restricted construction is to be avoided as not consonant with the principles deemed controlling in the interpretation of international agreements. Considerations which should govern the diplomatic relations between nations, and the good faith of treaties, as well, require that their obligations should be liberally construed so as to effect the apparent intentions of the parties to secure equality and reciprocity between them. [citations omitted].

*McElvy*, 523 F. Supp. at 47. In order to carry out a treaty obligation, the treaty "should be construed more liberally than a criminal statute or the technical requirements of criminal procedure." *Laubenheimer*, 290 U.S. at 298.

The United States does not expect foreign governments to be versed in our criminal laws and procedures. *Grin v. Shine*, 187 U.S. 181, 184 (1902). Thus, "[f]orm is not to be insisted upon beyond the requirements of safety and justice." *Fernandez v. Phillips*, 268 U.S. 311, 312 (1925). This approach is mandated by the liberal rules of construction that are to be used in interpreting extradition agreements.

Statements by the United States Department of State as to interpretation of treaties are to be given great weight by our courts. *Sayne*, 418 F.2d at 684 (5th Cir. 1969); *In re Ryan, supra*, 360 F.Supp. at 272 n.4; *In re Extradition of D'Amico*, 177 F. Supp. 648, 653 n.7 (S.D.N.Y. 1959), *appeal dismissed*, 286 F.2d 320 (2nd Cir. 1960).

### F. Fugitive for Extradition Purposes

The nature of the fugitive's absence from the country seeking his surrender is immaterial; it is sufficient for purposes of extradition that he be found in the United States.

*Vardy v. United States*, 529 F.2d 404, 407, *reh. denied*, 533 F.2d 310 (5th Cir. 1976); *In Re Chan Kam-Shu, supra*, 477 F.2d at 338-339; *United States ex rel. Eatessami v. Marasco,* 275 F. Supp. at 496.

## CONCLUSION

Extradition is often characterized as of its own kind or class, i.e., *sui generis. See, e.g., Hooker v. Klein,* 573 F.2d at 1369. Despite the unusual nature of the proceedings, extradition is regulated by a body of well-settled precedent, much of it originating with the Supreme Court. *Ahmad v. Wigen,* 910 F.2d at 1065. Although other elements must also be present, the primary issue of every extradition proceeding is whether there exists probable cause to believe that the fugitive has committed the crime charged in the requesting country. The latter determination is the kind that courts make in a preliminary hearing under Fed.R.Crim.P. 5.1. *Ward v. Rutherford,* 921 F.2d at 287. The extradition hearing must not be converted into a trial on the merits, and the rules of evidence and criminal procedure do not apply. The fugitive's opportunities to oppose the request are limited because his defenses will be aired in the requesting country.

Based on the information provided by Canada, including its identifying information of Rossman, there is probable cause to believe that he is extraditable to Canada.

Respectfully submitted this 11th day of April, 2013.

JOHN S. LEONARDO
United States Attorney
District of Arizona

s/*Ryan P. DeJoe*

RYAN P. DEJOE
Assistant U.S. Attorney

Copy provided on this date to:

Ryan Moore, Esq.

Hon. D Thomas Ferraro, United States Magistrate Judge