JON M. SANDS
Federal Public Defender
**RYAN MOORE**
Assistant Federal Public Defender
State Bar No. 023372
407 W. Congress St., Suite 501
Tucson, AZ 85701
Telephone: (520) 879-7500
*ryan_moore@fd.org*
Attorney for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CR13-MJ-10092-DTF |
| Plaintiff, | |
| vs. | **RESPONSE TO GOVERNMENT'S MEMORANDUM OF LAW REGARDING EXTRADITION** |
| Dane Edward Rossman, | |
| Defendant. | Extradition Hearing: April 17, 2013 |

The defendant, Dane Edward Rossman, by and through counsel, hereby responds to the Government's Memorandum of Law Regarding Extradition filed on April 11, 2013 (Doc. 24) and requests that this Court deny his extradition to Canada for the reasons discussed below. Mr. Rossman previously identified many of the disputed issues in his Motion for Release on Bail (Doc. 6), but files this responsive memorandum to supplement those arguments, identify the contested issues for the Court, and respond to the arguments set forth in the Government's memorandum of law.

Extradition should be denied for the following reasons:

**1. Failure to comply with the Treaty's authentication requirements.**

Of the only documents disclosed to defense counsel in support of extradition on February 25, 2013, the following deficiencies are noted:

a. Article 10, § 2 of the U.S.-Canada Extradition Treaty requires that all documents submitted in support of the extradition request must be "authenticated by an officer of the Department of Justice of Canada…." Extradition Treaty, U.S.-Can., Dec. 3,

1

1971, art. 10, § 2, 27 U.S.T. 983, T.I.A.S. 8237 ("Treaty"). Here, a "certificate of authentication" by Cathy Chalifour, an attorney with the Department of Justice of Canada, is present. But it explicitly certifies only a *fraction* of the overall documents provided, specifically, only the Affidavit of Roger Shallow and the Affidavit of Peter Trimble and **TWO** of its attached exhibits – "Exhibit A" (a copy of the Canadian Information) and "Exhibit B" (a copy of the Canadian arrest warrant). None of the remaining attachments to the Trimble Affidavit – the core of the evidence submitted by the Government to meet its burden of proof – has been authenticated: "Exhibit C" (the 64-page affidavit of William McGarry including numerous photographs and by McGarry's CV); "Exhibit D" (Canadian immigration records); "Exhibit E" (U.S. customs and immigration records); and "Exhibit F" (Canadian booking records for a Dane Rossman on June 27, 2010). Thus, NONE of the evidence submitted to allow to this Court to independently determine probable cause and identity has been properly authenticated by an officer of the Department of Justice of Canada, as required absolutely by Article 10, § 2 of the Treaty. This Court may therefore not consider the unauthenticated documents.

  b. Article 10, § 2 of the Treaty also requires that supporting documents be "certified by the principal diplomatic or consular officer of the United States in Canada." Treaty, art 19, § 2; *see also* 18 U.S.C. § 3190 (same). Here, the certificate prepared by Sylvia D. Johnson, Consul General of the United States in Canada, in accordance with 18 U.S.C. § 3190, fails to specify which of the vaguely referenced "supporting documents" have been properly and legally authenticated. Thus, the Government has failed to establish that *all* of the Canadian documents it has provided to this Court have been properly authenticated as required by 18 U.S.C. § 3190 and Article 10, § 2.

///

**2.      Lack of Dual Criminality**

A showing of dual criminality is an essential element of the government's burden of proof to establish a basis for extradition.  *Matter of Extradition of Maniero*, 950 F.Supp. 290, 291 n. 1 (S.D.Cal. 1996) (citing *Extradition of Sauvage,* 819 F.Supp. 896 (S.D.Cal. 1993)).

The international law doctrine of "dual criminality" is incorporated into Article 2 of the U.S-Canada Extradition Treaty and requires that an accused may be extradited only if the conduct is punishable by a term of imprisonment exceeding one year under the laws of both nations.  Treaty, art. 2, § 1; *see also United States v. Anderson*, 472 F.3d 662, 665 n. 1 (9th Cir. 2006); *Quinn v. Robinson*, 783 F.2d 776, 783 (9th Cir. 1986); *United States v. Khan*, 993 F.2d 1368, 1373 (9th Cir. 1993).  Dual criminality exists if the "essential character" of the acts criminalized by the laws of each country is the same and the laws are "substantially analogous."  *Manta v. Chertoff*, 518 F.3d 1134, 1141 (9th Cir. 2008).  Each element of the foreign offense need not be identical to the elements of a similar offense in the United States, but the conduct involved must be criminal in both countries.  *In re Extradition of Russell*, 789 F.2d 801, 803 (9th Cir. 1986).  The U.S.-Canada extradition treaty has been interpreted to require examining the criminal provisions of federal law or, if none, the law of the place where the fugitive is found or, if none, the law of the preponderance of the states.  *Cucuzzella v. Keliikoa*, 638 F.2d 105, 107 (9th Cir. 1981).

Here, first, as the Government concedes, (Doc. 24, p. 8.), there is no felony counterpart to the Canadian offense of "Disguise with the Intent to Commit an Indictable Offence."

Second, the conduct penalized by the Canadian offense of "Mischief Endangering Life" – which is charged here as a separate offense, rather than alleged as mere sentence enhancement provision – is not criminal in both countries.[1]  The Canadian offense

---

[1] According to pages 7-8 of the affidavit of Roger Shallow, the elements of "Mischief Endangering Life" are:  (1) the offence of Mischief has been established; (2) there was actual, as opposed to speculative, danger created; and (3) the danger flowed from the

appears to require no *mens rea* whatsoever as to distinct element of creating danger, but rather only strict liability, and is also distinct from the underlying crime of Mischief, which carries a 10 year statutory maximum, because it carries a lifetime statutory maximum.  The Government offers only the Arizona crime of Reckless Endangerment, Ariz. Rev. Stat. § 13-1201, as a possible analog.[2]  (Doc. 24, p. 8.)  But the Arizona statute (1) only penalizes conduct creating a risk of harm, rather than interference with property; (2) requires a *mens rea* as to the risk of harm, rather than strict liability, and (3) is only a felony where the offense conduct involves "a substantial risk of imminent death" (otherwise it is only a misdemeanor), and there has been no showing of the specific of the danger created (e.g., a statement of someone inside the Starbucks), much less any danger even approached a substantial risk of imminent death.  The "essential character" of the act criminalized by the laws of each country is not the same.  Therefore, because the conduct punished in two of the three Canadian offenses is either not criminal or is not a felony in the United States, the Court should not certify those counts for extradition.

///

---

deliberate act or the incidental damage therefrom.  The offense of Mischief, in turn, requires proof that:  (1) the offender interfered with property, which includes destroying or damaging property; (2) the offender's conduct was unlawful, i.e., that the offender did not act with lawful justification; and (3) the offender's conduct was wilful, i.e., the offender meant to interfere with property.

[2]  Ariz. Rev. Stat. § 13-1201 provides,

> A.  A person commits endangerment by recklessly endangering another person with a substantial risk of imminent death or physical injury.
>
> B.  Endangerment involving a substantial risk of imminent death is a class 6 felony.  In all other cases, it is a class 1 misdemeanor.

The Arizona jury instruction requires proof that:  "1. The defendant disregarded a substantial risk that his or her conduct would cause [imminent death/physical injury], and 2. The defendant's conduct did in fact create a substantial risk of [imminent death/physical injury]." *See* Revised Arizona Jury Instructions – Criminal (RAJI), § 12.01, p. 125, (2011) *available at* http://www.azbar.org/sectionsandcommittees/committees/criminaljuryinstructions.

**3.     Insufficient Proof of Identity** that the Defendant, Dane Edward Rossman, is the same "Dane Rossman" who was arrested in Canada on June 27, 2010 for a breach of the peace.

According to the report of the U.S. Marshal included in the Government's extradition packet, the Defendant was arrested in this case in Tucson on February 21, 2013. Testify by a live witness as to the results of a fingerprint comparison should be required to establish that he is the same person who was previously arrested in Canada on June 27, 2010.

**4.     Lack of Probable Cause** to believe that the Dane Rossman who was arrested in Canada on June 27, 2010 for a breach of the peace is the same person who committed the charged property damage crime one day earlier on June 26, 2010.

In an extradition hearing, the government must show, inter alia, that there is probable cause to find that the crime was committed and that the named extraditee committed it. *In re Extradition of Gonzalez*, 52 F. Supp. 2d 725, 736 (W.D. La. 1999) (citing *United States v. Barr,* 619 F.Supp. 1068, 1070 (E.D.Pa. 1985) (emphasis supplied)). The standard to be applied is that of probable cause as used in federal preliminary proceedings. *Sindona v. Grant*, 619 F.2d 167, 175 (2nd Cir. 1980). The government must show evidence "sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt." *Coleman v. Burnett,* 477 F.2d 1187, 1202 (D.C.Cir. 1973); *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979).

Both the extradition statute, 18 U.S.C. § 3184, and Article 10 of the U.S.-Canada Extradition Treaty, require this Court to determine whether the evidence is sufficient to justify Rossman's committal for trial on the charges in the complaint.

Generally, courts deny extradition where the government fails to establish the reliability of the identification of the extraditee. *See, e.g., In re Extradition of Gonzalez*, 52 F.Supp.2d 725, 738 (W.D. La. 1999); *Matter of Surrender of Ntakirutimana,* 988 F.Supp. 1038, 1043 (S.D.Tex. 1997); *In re Extradition of Sandhu*, No. 90CR.MISC.1(JCF), 1997 WL 277394 *7 (S.D.N.Y. 1997). There is no *per se* rule that

specifies which identification procedures are competent for probable cause purposes in extradition in international extradition matters. *Quinn v. Robinson*, 783 F.2d 776, 815 (9th Cir. 1986). Photographs provided by the requesting state may be used. *Glucksman v. Henkel*, 221 U.S. 508, 513 (1911).

The Ninth Circuit has held that that an eyewitness identification (which did not occur in this case) by a fraud victim based on a single photograph, where the victim previously "had multiple interactions with" the defendant, may be competent evidence of identity in an extradition proceeding. *Manta v. Chertoff*, 518 F.3d 1134, 1145 (9th Cir. 2008) (citation omitted). But an identification based on the showing of a single photograph to an individual who did *not* witness the crime, as here, seven years after the crime occurred, has been held insufficient. *In re Extradition of Chavez,* 408 F.Supp.2d 908, 912-14 (N.D.Cal. 2005). In that same case, the court also held that a photo comparison by an "expert," who compared 25 facial features in a frontal photograph of a man's face and shoulders and found 15 similarities, which even the district court agreed looked "similar," was also not enough for probable cause on identity given the questions remaining. *Id.*

Here, it is alleged that the Defendant is the same person depicted in various photographs and videos breaking a window of a Starbucks Coffee Shop at 4:25 p.m. on Saturday, June 26, 2010, along with a second man allegedly identified as Joel Bitar. But no one – and certainly not the Defendant – was ever arrested or booked in Toronto for that offense. A "Dane Rossman" was subsequently arrested and booked for an *unrelated* offense at a different location later the following day, Sunday, June 27, 2010 at 12:20 p.m., along with hundreds of other peaceful demonstrators, for an alleged breach of the peace for failing to disperse. To connect that Dane Rossman to the perpetrator of Starbucks crime the day before, Canadian investigators have merely compared a single booking photograph and sparse booking record taken after the unrelated arrest on June 27 to various photographs of the perpetrator taken in the days leading up to the property crime on June 26.

6

The investigator, however, notes very few similarities – far fewer than the 15 that were not enough in *In re Extradition of Chavez.* Also, a simple lay comparison of the booking photo with perpetrator's various photos reveals significant differences: the perpetrator has deep laugh lines not present in the booking photo; the perpetrator has much lighter and slightly shorter hair than that present in the booking photo; the perpetrator's eyebrows are not as thick or dark as those in the booking photo; the perpetrator's nose is wider at the base and his brow and check bones are more prominent than those in the booking photo. Moreover, the various photographs of the perpetrator are taken from other angles and distances and thus do not allow for proper, one-for-one, direct comparison to the booking photo.

Further, the booking report accompanying the June 27 arrest contains very few biographical identifiers for this Court to compare to the photos of the perpetrator of the June 26 offense. The extent of its description is as follows: colour white; brown eyes, height 180; weight 64; short, brown hair, date of birth [redacted here]; "wearing glasses, black t-shirt, black jeans, thick eye brows." Thus, the only information known to pertain to the Dane Rossman arrested on June 27 provides very little *unique, individualized* information upon which to base an identification of the June 26 perpetrator and an international extradition. These broad identifiers describe potentially hundreds of the estimated 5,000 to 10,000 young people who are known to have been present in downtown Toronto for the mass demonstrations on June 26.[3] Thus, the available description casts far too broad of a net. Without more (e.g., a fingerprint comparison, an eyewitness identification, a match of the perpetrator's brown baseball cap, blue jeans, satchel, or distinctive black boots to the items discovered on the Dane Rossman arrested on June 27), a United States citizen should not be subject to arrest and extradition based on mere similarity in appearance and general proximity to the perpetrator of a crime

---

[3] *See* Ian Harrison and Charmaine Noronha, "Vandals Smash Windows, Torch Police Cars, as Thousands Protest G-20 Summit in Canada," *Associated Press* (June 26, 2010), available at; http://www.foxnews.com/world/2010/06/26/police-say-protests-canadian-summits-tamer-previous-summits/ (last visited March 5, 2013).

abroad, particularly where it is undeniable that thousands of other young people were present at or near the crime scene.

The purported Canadian photograph expert expends much energy comparing the various photos of the perpetrator taken on the two days leading up to the offense (in which he is seen wearing a brown hat and blue jeans on June 25 and all black clothing and bandana with distinctive black boots on June 26) to establish that those are the same person – a point irrelevant here – but almost no analysis on the key issue: whether the booking photo and booking record of the Dane Rossman taken on June 27 matches the various photos of the perpetrator of the June 26 crime taken on June 25 and June 26. Evidence that the photographs taken on June 25 and June 26 depict the same person adds absolutely nothing to the Governments' case here.

The investigator also asks the Court to assume that the identity of the second man with whom the perpetrator was photographed during the offense is Joel Bitar. Immigration records allegedly show that a Dane Rossman returned to the United States on June 28, 2010 in the same vehicle as a Joel Bitar. But there is simply no *evidence* beyond mere allegation included in the affidavits from which this Court might independently find probable cause to believe that the identity of that second man is Bitar, or that he is the same Joel Bitar named in the immigration records. In asking this Court to determine whether probable cause exists, as a check on the executive's power to arrest, Canadian law enforcement may not merely ask the Court to take its word for it.

Therefore, the Government has not met its burden to establish that the named extraditee committed the crime.

Therefore, the Court should not certify the charged counts for extradition.

RESPECTFULLY SUBMITTED:   April 15, 2013.

JON M. SANDS
Federal Public Defender

s/ Ryan Moore
J. RYAN MOORE
Assistant Federal Public Defender

8

*The above signed does hereby certify that, on the above date, he electronically transmitted this document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:*

Ryan DeJoe
Assistant U.S. Attorney